# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LANE C. HURLEY,

    Petitioner,

v.

BRIAN THOMPSON, SUPERINTENDENT,
STATE CORRECTIONAL INSTITUTION,
--MERCER, PA,

    Respondents.

3:13-CV-1502
(JUDGE MARIANI)

FILED
SCRANTON

NOV 13 2017

PER _____

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is a Report and Recommendation ("R&R") (Doc. 40) by Magistrate Judge Carlson recommending this Court deny the petition for habeas corpus. For the reasons that follow, upon *de novo* review of the R&R, the Court will adopt the pending R&R, but grant Petitioner Hurley a Certificate of Appealability to the United States Court of Appeals for the Third Circuit on the issue of insufficiency of the evidence.

### II. ANALYSIS

A district court may "designate a Magistrate Judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition" of matters pending before the court. 28 U.S.C. § 636(b)(1)(B). If a party files objections to a Magistrate Judge's Report & Recommendation, the District Court "shall make a *de novo* determination of those portions of the report or

1

specified proposed findings or recommendations to which objection is made." *Id.* at § 636(b)(1).

Petitioner Lane Hurley was accused of sexually molesting his 10 year old niece, Jessica, under 18 Pa.C.S.A. §§ 3123(a)(6), 3125(a)(7), 3126(a)(7) and 6301(a)(1). Doc. 1 at 3. The abuse occurred during the summer of 1997, but Jessica did not have any memory of the abuse until 2001, when she had been undergoing psychological treatment for her anorexia and suffered a breakdown in school. R&R, at 9. Jessica recalled that the abuse happened almost nightly during the summer of 1997, which included Hurley showing her pornography and engaging her in sexual activity, including inappropriate undressing, fondling, and oral sex. *Id.* at 13.

There were two trials in state court, both of which ended in a conviction. After the second trial, Hurley filed an appeal. His conviction was affirmed by the Pennsylvania Superior Court and the Pennsylvania Supreme Court denied Hurley's appeal in 2009. *Id.* at 19. In 2010, Hurley filed a Pennsylvania Post-Conviction Relief Act ("PCRA") petition on the grounds that exculpatory medical records from Jessica's psychological treatment should have been disclosed, and his counsel was ineffective for failing to obtain the exculpatory records. *Id.* at 20. The Court of Common Pleas denied the petition, which was affirmed on appeal by the Pennsylvania Superior Court. *Id.* at 26; Doc.20, at 25; Doc. 1-2, at 2. The Pennsylvania Supreme Court denied Hurley's petition for allowance of appeal in May 2013. Doc. 1-3, at 3. In July 2013, Hurley filed this habeas petition, arguing that the evidence was

2

insufficient as a matter of law, that certain medical records that were withheld from the defense were exculpatory, and that his lawyer's failure to obtain those records constituted ineffective assistance of counsel. Doc. 20. The Magistrate Judge issued the R&R on June 29, 2016 (Doc. 40) recommending that the petition be denied. Hurley filed objections to the R&R on August 12, 2016. Doc. 44 (hereinafter "Objections").

### *Brady* Violation

Hurley objected to the R&R's conclusion that there was no exculpatory evidence withheld from the defense. Both the *Brady* argument and ineffective assistance of counsel argument were adjudicated on the merits during the PCRA proceeding. R&R, at 45–48. The Pennsylvania Superior Court then affirmed the PCRA court's decision. *Id.* at 45–47. Furthermore, the Magistrate Judge conducted an independent *in camera* review of "all of the medical and mental health records that have been submitted under seal in this case, and compared those against the records that were provided to Hurley." *Id.* at 27 n. 1. He did "not find any indication that Hurley was deprived of *Brady* material." *Id.*

Hurley objected that the "determination of whether any of the documents...contained material that is favorable to the defense...is not a determination that the Magistrate Judge was capable of making without the guidance of an expert." Objections, at 23. This argument is without merit. The determination of whether evidence is "favorable to the defense," i.e. "exculpatory," is squarely within the province of judicial authority. Whether or not a *Brady* violation occurred is at most, a mixed question of law and fact. The Magistrate

3

Judge, by virtue of his judicial office, is qualified to conduct a review of the underlying facts and draw conclusions from that review. 28 U.S.C. § 636(b)(1)(B).

The objections also argue that defense counsel should have received more portions of the therapy notes that "preceded the breakdown on May 17, 2001." Objections, at 30. But the objections do not provide a reasonable explanation as to what kind of exculpatory evidence the redacted therapy notes could contain—and they do not attempt to rebut the fact that the Magistrate Judge found most of the redacted notes to be "related to Jessica's treatment for eating disorders and had no apparent relevance at all to the abuse allegations." R&R, at 27. The objections are therefore overruled.

The Court notes, however, that it has also conducted an independent review of the sealed records, and it has found two entries from the withheld records that are arguably relevant, though wholly cumulative of what the defense already knew. They are standalone statements by Jessica that she did not recall being sexually abused by Hurley, even though she was aware Hurley's daughter had made accusations of sexual abuse against him. Doc. 29-7, at 12, 24. This information is not new to defense counsel. *See e.g.* Objections, at 14 n. 13 (representing that Hurley's counsel knew that his daughter made sex abuse accusations against him, and that "Hurley himself proposed presenting evidence of these accusations as an additional means of discrediting Jessica – on the theory that, because she and his daughter were friends, their parallel 'memories' of misdeeds by Hurley" may have been false). Furthermore, on review of the material that was disclosed, the Court finds

that defense counsel *were* provided portions of therapy notes that pre-dated Jessica's breakdown, including an entry stating that Jessica knew her cousin was sexually abused by Hurley but did not think she herself was sexually abused by him. These notes were provided by the trial court prior to Hurley's first trial, after the court conducted an *in camera* review in front of counsel and provided counsel the portions that "the court determined were potentially relevant to the case," consistent with *Brady* principles. R&R, at 10.

Thus, the significance of these additional statements is inconsequential, since their contents mirror the body of evidence that was already provided to defense counsel. A *Brady* violation requires a showing that there "is reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Maynard v. Gov't of Virgin Islands*, 392 F. App'x 105, 112 (3d Cir. 2010). Given what had already been disclosed to the defense, there is no reasonable probability that these additional, cumulative statements would have changed the result of the proceeding. Hurley's objections concerning the withheld medical records are overruled.

**Insufficiency of Evidence**

Hurley's objections also argue that the evidence against him is constitutionally insufficient to result in a criminal conviction, when the only direct evidence presented at trial was Jessica's testimony based on her recovered memories, which was unreliable and uncorroborated. The R&R concludes that the insufficiency argument fails on the merits, pointing out that the trial judge held "a full pretrial evidentiary 'taint' hearing [prior to the

5

second trial], at which three of Hurley's experts testified that they believed Jessica's recalled memory was unreliable and likely the product of discredited therapy." R&R, at 37. The trial judge determined that Jessica should not be prevented from testifying, but allowed defense experts to try to discredit her testimony.[1] *Id.* the second trial, an expert did testify that repressed memory recovery was not "scientifically acceptable" and that Jessica should have been "stabilized before anything 'emotionally important' was discussed." *Id.* at 18. The R&R also notes there was some corroborating evidence of Jessica's testimony, such as the fact that Jessica's mother and brother both saw Hurley enter Jessica's room during the summer of 1997, and that the mother saw Jessica trying to lock her bedroom door and climb out of her window at night. *Id.* at 38. Furthermore, the R&R pointed out that both the trial judge and Hurley's lawyer found Jessica to be credible and articulate, and that Jessica's therapist had previously testified that she "did not use suggestive questioning, hypnosis, or any other unscientific techniques during her sessions with the victim." *Id.* at 40. Thus, the R&R concludes that Hurley failed to show that the evidence was insufficient as a matter of law. *Id.* at 41. The R&R concedes, however, that "much of Jessica's testimony about the secretive abuse was uncorroborated," as there was no physical evidence or witness testimony corroborating the underlying sexual abuse charges. *Id.* at 38.

---

[1] Due to the fact that none of the three experts who testified at the taint hearing were available for trial, defense counsel retained another expert to testify at the second trial, Dr. Michael Labellarte, M.D. from Johns Hopkins University School of Medicine. *Id.* at 12.

In his objections to the R&R, Hurley argues that while Jessica sincerely believed her testimony was truthful, her psychiatric illness and hallucinations, together with the fact that the act of abuse itself was not corroborated by either witness testimony or physical evidence, render her testimony "so inherently untrustworthy that they cannot constitutionally support a conviction." Doc. 44 at 10. While it was true that some of Jessica's family members observed Hurley entering Jessica's room, no one found this fact alarming, and Jessica's mother in fact "encouraged him to go in and have nighttime prayers with Jess and [Jessica's brother] occasionally." *Id.* at 11 (citing R. 713). Jessica's mother also testified that she did not observe any blood or semen on Jessica's bedsheets at the time of the abuse, even though Jessica reported that ejaculation occurred at times during the period of abuse. *Id.* at 13. In short, the only evidence directly linking Hurley to the crime was Jessica's testimony, which was based on "recovered" memories that had previously been repressed for five years.

The Court finds the reliance on repressed memory evidence in this case to be troublesome—especially since there was no other evidence directly linking Hurley to the allegations of sexual abuse. The case law on repressed memory is sparse. In a case involving the admissibility of expert testimony on the reliability of repressed memories, the Pennsylvania Supreme Court suggested that a witness relying on repressed memories presents an issue of credibility, which is well within "the province of the jury." *Com. v. Crawford*, 718 A.2d 768, 774 (1998). The court affirmed the trial court's exclusion of expert

7

testimony, stating that the "jury was capable of assessing Reed's credibility without the expert testimony regarding revived repressed memory...The assessment of Reed's credibility, which was at issue, was properly left to the jury." *Id.*

However, a state court decision does not bind this Court in its decision of whether the evidence was sufficient as a constitutional matter. It is true that a "child victim's testimony alone—if credited by the jury, which it apparently was—[i]s sufficient to support the convictions" under state law. *Cruceru v. Sobina*, 2009 WL 3633762, at *7 (E.D. Pa. Oct. 29, 2009) (adopting Magistrate Judge's report and recommendation and denying habeas relief). But "deference does not imply abandonment or abdication of judicial review." *Lambert v. Blackwell*, 387 F.3d 210, 234–35 (3d Cir. 2004) (internal citations omitted). A federal habeas court can "disagree with a state court's credibility determination." *Id.* at 235. The "overarching standard" of review is still objective reasonableness; if it is lacking "in light of the evidence presented in the state court proceeding, habeas relief is warranted." *Id.*

The question of whether repressed memory evidence, standing alone, constitutes insufficient evidence under the Due Process Clause is a novel one. The Court was only able to find one federal court case that arguably analyzed whether reliance on repressed memory evidence violated due process. In *Johnson*, the Seventh Circuit addressed the question of whether exclusion of expert testimony on repressed memories violated the defendant's "right to present a defense." *Johnson v. Bett*, 349 F.3d 1030, 1035 (7th Cir. 2003). The court found that regardless of whether the issue was "a violation of the Due

8

Process Clause or the Sixth Amendment's Confrontation Clause," no constitutional violation occurred because the jury could determine whether repressed memory evidence was credible on its own. *Id.* 1036 ("The jury would not need expert testimony to discredit Wiener's account of how he happened to remember seeing Basten and Johnson carrying something. The jury would likely conclude on its own that another explanation existed...")[2] At most, *Johnson* stands for the proposition that testimony based on repressed memories is a credibility question left to the jury, but it does not hold that the repressed memory evidence—and only repressed memory evidence—is constitutionally sufficient for a criminal conviction.

In recent years, the science of memory repression has been cast in doubt by federal courts. A court in this district noted last year that "despite popular misconceptions, there is little empirical support for memory repression." *Leone v. Borough*, 2016 WL 5914262, at *3 (M.D. Pa. Oct. 11, 2016). "In fact, there is no evidence to support their authenticity or veracity." *Id.* The court then cited a comprehensive collection of academic literature debunking the idea of memory repression, including literature specifically addressing the recovery of memories of childhood sexual abuse. *See id.* at *3 n. 4, 5 (listing academic literature on the unreliability of repressed memories). The court then said in dicta that

---

[2] The argument that repressed memory evidence was insufficient under *Jackson* was raised in another case, but the district court declined to review it because "Petitioner did not properly preserve [a sufficiency of the evidence claim] for federal habeas corpus review." *Crosky v. Sheets*, 2011 WL 1812430, at *14 (S.D. Ohio May 12, 2011).

9

"Plaintiff's attorneys were correct in their decision not to pursue [sexual abuse claims based on] this line of argument." *Id.*

In a more factually analogous case, the Second Circuit was confronted with a habeas petition based on the prosecution's failure to disclose use of hypnosis to induce complainants to recover repressed memories of sexual abuse. *Friedman v. Rehal*, 618 F.3d 142 (2d Cir. 2010). The court denied habeas, but only on the grounds that the case involved a guilty plea. In a guilty plea, as opposed to a trial, impeachment evidence need not be disclosed by the prosecution under *Brady*, because "impeachment information is special in relation to the *fairness of a trial*, not in respect to whether a plea is *voluntary*." *Id.* at 153 (citing *United States v. Ruiz*, 536 U.S. 622, 629, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002)). The Second Circuit held that the "fact that hypnosis may have been used to stimulate memory recall and potentially induce false memories of abuse" was not "exculpatory" evidence, but rather, "impeachment" evidence, thus there was no *Brady* violation. *Id.* at 153.

Nevertheless, the Second Circuit devoted a lengthy section of its opinion to the unsoundness of repressed memories:

> While the law may require us to deny relief in this case, it does not compel us to do so without voicing some concern regarding the process by which the petitioner's conviction was obtained…Overall, at least seventy-two individuals were convicted in nearly a dozen major child sex abuse and satanic ritual prosecutions between 1984 and 1995, although almost all the convictions have since been reversed…These prosecutions were largely based on memories that alleged victims "recovered" through suggestive memory recovery tactics, including those petitioner claims were used in this case.

> Indeed, the dramatic increase in conspiratorial charges of child sexual abuse has been traced to a relatively small group of clinical psychologists who supported the psychoanalytic notion of "repressed memories" and encouraged patients to employ extensive "memory recovery procedures" to "break through the barrier of repression and bring memories into conscious awareness." Popular memory recovery procedures included hypnosis, age regression, dream interpretation, guided abuse-related imagery, use of photographs to trigger memories, journaling, and interpretation of symptoms as implicit memories. These procedures and others commonly employed have great potential to induce false memories...*The prevailing view is that the vast majority of traumatic memories that are recovered through the use of suggestive recovery procedures are false, and that almost all—if not all—of the recovered memories of horrific abuse from the late-1980's and early-1990's were false.*

*Friedman*, 618 F.3d at 155–56 (emphasis added). The Court therefore urged the District Attorney to re-investigate the case based on the academic literature debunking repressed memory recovery, though it was constrained by precedent to deny habeas.

This Court agrees with the Second Circuit that the science on repressed memories raises serious concerns about the reliance on such evidence, alone, to sentence a man to ten years in prison. Unlike in *Friedman*, this case involved a jury trial, which included testimony from a defense expert testifying to the unreliability of repressed memories. Thus, the Court is bound to defer to the judgment of the jury after the defendant has received a fair trial. "[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Parker*, 567 U.S. at 43 (internal citation omitted). Given the highly deferential standard set forth in *Jackson v. Virginia*, this Court must deny habeas. Nevertheless, mindful of the growing consensus within the science community that the methods of memory recovery are highly unreliable, the Court finds that

11

the conviction, based solely on "recovered" memories that were absent from the victim's mind for several years, may be "so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656, 132 S. Ct. 2060, 2065, 182 L. Ed. 2d 978 (2012).

The Court may issue a certificate of appealability when petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Although Hurley has not yet requested a Certificate of Appealability, the District Court may grant *sua sponte* a certificate of appealability. *Robinson v. Johnson*, 313 F.3d 128, 133 (3d Cir. 2002). Facilitating the appeal is warranted where, as here, the petitioner is in his ninth year of his ten year maximum sentence. *See* Doc. 37 (August 8, 2015 letter from Petitioner counsel, representing that as of July of 2015, Hurley began the seventh year of his ten-year maximum sentence). The Anti-Terrorism and Effective Death Penalty Act of 1996 requires the district court certify specific issues for review. 28 U.S.C. § 2253(c).

The issue certified for appeal is whether a conviction in which the *only* direct evidence at trial originated from repressed memory testimony of the victim may be constitutionally sufficient, when a growing body of academic literature has criticized repressed memory recovery as prone to the creation of false memories. *See e.g.* Samuel P. Gross, *Exonerations in the United States 1989 through 2003,* 95 J.Crim. L. & Criminology 523, 539-40 (2005); Dorothy Rabinowitz, *No Crueler Tyrannies: Accusation, False Witness, and Other Terrors of Our Times* (2003); Thomas D. Lyon, *Applying Suggestibility Research*

to the Real World: The Case of Repeated Questions*, 65 Law & Contemp. Probs. 97, 106 (2002). Because this Court finds "that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further," the Court will issue a certificate of appealability. *Miller-El*, 537 U.S. at 327.

### III. CONCLUSION

For the reasons outlined above, the petition for habeas corpus relief (Doc. 1) will be denied and a certificate of appealability shall issue. A separate Order will follow.

Robert D. Mariani
United States District Judge